**SIGNED THIS: October 23, 2023**

_____

**Mary P. Gorman**
**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | |
| | ) | Case No.    23-70449 |
| RILEY N. CRAIG, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |

## O P I N I O N

Before the Court after trial is a Motion for Sanctions Under 11 U.S.C. §362(k) for Violations of the Automatic Stay, filed by the Debtor, Riley N. Craig, against Tom DeVore. For the reasons set forth herein, Mr. DeVore will be found to have willfully violated the automatic stay and will be sanctioned.

### I.      Factual and Procedural Background

Riley N. Craig ("Debtor") filed her voluntary petition under Chapter 7 of the Bankruptcy Code on May 31, 2023. She is represented in her bankruptcy

case by Attorney Joseph Pioletti. Relevant to the issues here, the Debtor scheduled an ownership interest in two businesses: Bow and Arrow Salon and Extensions, LLC and Future You Brands, LLC. With respect to Bow and Arrow Salon, she said that she was the sole owner, listed its value as $5000, and reported that she had operated the business since 2017. With respect to Future You, she disclosed that she was a 50% owner, listed its value at $264,300, and stated that the business began in early 2022. The Debtor scheduled a debt owed to Bradford National Bank in the amount of $601,828; she claimed the debt was secured by the assets of Future You. She listed Tom DeVore as a codebtor on the Bradford National Bank debt.

On August 9, 2023, the Debtor filed her Motion for Sanctions against Tom DeVore. She alleged that she notified Mr. DeVore of her bankruptcy filing by email the day after she filed. She asserted that, later that same day, Mr. DeVore emailed her and others "ridiculing" her for the filing. Two days after she filed bankruptcy, Mr. DeVore filed a lawsuit in the Circuit Court of Bond County, Illinois, seeking the judicial dissolution of Future You, the "Judicial Dissociation" of the Debtor from Future You, and an accounting. Notwithstanding the Debtor's attorney notifying Mr. DeVore by email that the filing of the lawsuit violated the automatic stay, just four days later, Mr. DeVore filed an emergency motion in the Bond County lawsuit for a temporary restraining order and preliminary injunction. In his emergency motion, Mr. DeVore sought the turnover of personal property in the possession of the Debtor. He scheduled a hearing on his motion on one day's notice. According to

the Motion for Sanctions, the Debtor notified the Circuit Clerk in Bond County of her bankruptcy filing and the state court judge declined to proceed.

In her Motion for Sanctions, the Debtor also asserted that, twelve days after she filed, Mr. DeVore demanded payment from her of $256.80 which he claimed was for personal charges she made on a Future You credit card. The email attached shows that, in making the demand, Mr. DeVore had threatened theft charges. She immediately paid him the money.

The Debtor also claimed in her Motion for Sanctions that, approximately three weeks after she filed, Mr. DeVore filed another lawsuit in Bond County, Illinois, seeking an order of protection. In his petition for order of protection, Mr. DeVore failed to provide any details of domestic violence or other conduct of the Debtor that would support the issuance of an order of protection. Rather, according to the Debtor's Motion, the petition consisted largely of Mr. DeVore expressing displeasure at certain social media postings and relied on conversations that the Debtor allegedly had with third parties but not Mr. DeVore. The Debtor claimed that the filing was an attempt to circumvent the state court judge's refusal to hear Mr. DeVore's first lawsuit.

The Motion for Sanctions also contained allegations that Mr. DeVore had harassed the Debtor by laughing out loud at her creditors meeting to the point of being admonished by the Chapter 7 trustee to conduct himself more appropriately and that he had posted numerous criticisms of the Debtor on various social media platforms. Finally, the Debtor complained that Mr. DeVore had encouraged creditors of Future You to pursue her for obligations of the

company, advising such creditors that her bankruptcy had nothing to do with her potential liability for such debts.

Mr. DeVore responded through counsel to the Motion for Sanctions. He did not dispute that he had taken the actions complained of in the Motion. He asserted, however, that he had acted in good faith and did not believe that any of his actions violated the automatic stay. He said that, because he was pursuing the Debtor for what he claimed were her post-petition actions, he did not think he was restrained by the stay.

An evidentiary hearing was held on September 19, 2023. The Debtor testified in support of her Motion for Sanctions. The Debtor said that she first met Tom DeVore in May 2020 when she hired him to assist her in reopening her Bow and Arrow Salon despite the COVID-19 shutdown orders in place in Illinois. She said that she paid Mr. DeVore—who is an attorney licensed to practice in Illinois—$300 or $350 to send letters to the local police department, the Sangamon County State's Attorney, and the Sangamon County Health Department about her intent to reopen her salon despite the shutdown orders. She said that Mr. DeVore also sent some letters on her behalf to clients and assisted her in obtaining a protective order against her mother. Mr. DeVore also included her as a plaintiff in a lawsuit he filed in Sangamon County against the Illinois Governor, although she said that she did not recall agreeing to be part of that action.

The Debtor testified that she developed a personal relationship with Mr. DeVore and became intimately involved with him beginning in June 2020 on

the same day they had been in court on the matter involving her mother. The Debtor said that she moved into Mr. DeVore's home and their personal, intimate relationship continued until February 2023 when she moved out.

With respect to Future You, the Debtor testified that the company is owned by her and Mr. DeVore. She explained that she is a hair stylist and had an idea to create a line of hair care products; she described the endeavor as her passion. She said that she was looking for investors when, in June or July 2021, Mr. DeVore asked her for a business plan and suggested that he could assist her in getting bank financing. Subsequently, financing was obtained through his efforts with the Bradford National Bank. The Debtor identified an operating agreement for Future You that contained the signatures of both her and Mr. DeVore and that identified Mr. DeVore at his law office address as the drafter. She said that she did not read the agreement before she signed it. To the contrary, she said that, when they were at the bank to sign the agreement, she asked if it could be read to her and Mr. DeVore responded by swearing at her, telling her to "shut up," and directing her to sign the agreement. She said that she was mortified and embarrassed by Mr. DeVore's treatment of her, and she went ahead and signed the agreement without reading it. She said that she trusted Mr. DeVore because he was a lawyer.

The Debtor said that, when she filed her bankruptcy, approximately $600,000 was owed to Bradford National Bank and that she and Mr. DeVore were both liable on that debt. She also said that Future You was not a thriving business in 2023. She previously worked on sales and an employee, Ryan

Cunningham, did IT work for the business. Mr. DeVore was the "financial guy" according to the Debtor; he attended some of the pop-up sales they held, but he did not sell the products. Her sales were principally to salons and consumers.

According to the Debtor, when she and Mr. DeVore ended their personal relationship in February 2023, they made no agreement about the continued operation of Future You. In May 2023, however, Mr. DeVore emailed her about the business, demanding that she buy him out or allow him to take over. She testified that she had no ability to buy him out, and, again, the business was not thriving. He sent her several offers, but she said that he either rescinded the offers he made, or the offers required her to sign a non-compete agreement and to agree to what she described as a "gag order." Because they were unable to agree, the Debtor began looking for a lawyer but had trouble finding representation. She did not want to personally deal with Mr. DeVore. She ultimately chose to file bankruptcy.

The Debtor identified a series of exhibits in support of her Motion for Sanctions. She first identified an undated email from Mr. DeVore to someone named Tom that the Debtor said worked at the shipping company used by Future You. In his email, Mr. DeVore told Tom that the Debtor's filing for bankruptcy the day prior would not preclude the shipping company from pursuing the Debtor for Future You's debts, adding that they were not her personal debts. Mr. DeVore characterized the Debtor in the email as ignorant, a

petulant child, and as having a nasty character; he claimed that her ignorance was the reason that she did not have access to Future You's finances.

A copy of the complaint filed in Bond County by Mr. DeVore on June 2, 2023—just two days after this case was filed—was also identified by the Debtor. The complaint listed both Future You and Mr. DeVore as plaintiffs and requested a judicial dissolution of Future You, a judicial dissociation of the Debtor from Future You, and an accounting of inventory from the Debtor. The complaint referenced the fact that the Debtor had filed bankruptcy and included as an exhibit a copy of the pre-petition operating agreement signed by the Debtor and Mr. DeVore in August 2022. The complaint was signed and verified by Mr. DeVore as the attorney for himself and Future You.

The Debtor also identified an email sent to her by Mr. DeVore on June 3, 2023. In the email, Mr. DeVore referred to himself and Future You as "his clients" and demanded the return of items of personal property in the Debtor's possession that he claimed belonged to Future You. He referenced the Bond County lawsuit and said that if the Debtor did not immediately turn over the items requested, he would set an emergency hearing in Bond County. He acknowledged the Debtor's bankruptcy filing but suggested that she was not represented in the matters set forth in his demand and therefore, unless she hired independent counsel to represent her in Bond County, he would continue to contact her directly. During her testimony about this exhibit, the Debtor said that she never hired a separate attorney to represent her in that lawsuit.

The Debtor identified a copy of the emergency motion filed by Mr. DeVore on June 6, 2023, in the Bond County lawsuit seeking a temporary restraining order and permanent injunction against her. The motion sought an order finding that Mr. DeVore and Future You were authorized under Illinois law to operate Future You's business to the exclusion of the Debtor and an order compelling the Debtor to turn over a volume of personal property. The Debtor also identified a return of service from the Sangamon County Sheriff's Office dated June 9, 2023, which she said showed service of the emergency motion on her. Attached to the service return was a copy of a summons issued by the Bond County Circuit Clerk. During her testimony, the Debtor said that she was served by a sheriff's deputy at her place of business in front of staff from a neighboring business.

The Debtor identified an email sent to her by Mr. DeVore demanding immediate reimbursement of $256.80 that he claimed was improperly charged by the Debtor to a Future You credit card. In the email, Mr. DeVore claimed that, because it appeared from the records attached to the email that the charge was made after the bankruptcy was filed, he was not stayed from collection. He also said that if not repaid within 24 hours, he would "bring a small claims action for theft." The Debtor testified that, upon receiving the email, she used her Venmo account to immediately pay Mr. DeVore $256.80.

Copies of the summons and petition for order of protection filed by Mr. DeVore against the Debtor on June 22, 2023, were also identified by the Debtor. On the form petition for order of protection, Mr. DeVore checked a box

indicating that he needed emergency relief and that the Debtor should be ordered to stop harassment, stalking, and interference with his personal liberty. Further, he asked that she be ordered not to have any communication with him and to stay away from him, his home, and his law office. He suggested that the Debtor be ordered to undergo counseling, be prohibited from contacting any of Mr. DeVore's clients, including customers of Future You, and be barred from making any social media posts containing negative information about him. In a draft narrative attached to the form petition, Mr. DeVore went on to accuse the Debtor of cyberstalking him and depriving him of his liberty through her social media activities. Mr. DeVore relied on conversations he claimed the Debtor had with his employee, Ryan Cunningham, to support his allegation that the Debtor had threatened to destroy Future You and that she was unstable. He also relied on conversations he claimed the Debtor had with Janelle Towne, a mutual friend, for his allegation that the Debtor threatened to destroy him and Future You. He also alleged that he was harmed by a social media post that the Debtor made involving Melissa Smith—a person with whom he claimed to have no interpersonal relationship—wherein the Debtor warned Ms. Smith about getting involved with Mr. DeVore. Also attached to Mr. DeVore's petition were a variety of excerpts from social media postings made by him and others.

The Debtor testified that she hired an attorney to represent and defend her against the petition for order of protection. She paid the attorney a $3000 flat fee for the representation. In response to questioning from her attorney, the

Debtor unequivocally denied ever emotionally or physically abusing Mr. DeVore, ever harassing or intimidating Mr. DeVore, ever restraining Mr. DeVore's physical ability or liberty to move freely, or ever taking actions to purposefully damage Future You. She also said that she knew Janelle Towne, the person referred to in Mr. DeVore's petition. She said that Ms. Towne had worked on Mr. DeVore's 2022 campaign for Illinois Attorney General and that she and Ms. Towne became friends, often having long, "heartfelt" phone conversations. She denied ever telling Ms. Towne that she was out to destroy Mr. DeVore or Future You. She acknowledged knowing that Ms. Towne, although not previously having worked for Future You, had started contacting Future You customers to try to drum up sales sometime in the summer of 2023 at Mr. DeVore's request. The Debtor identified copies of text messages exchanged between Ms. Towne and a customer, Ashley Knight, wherein Ms. Towne asked if Ashley would be purchasing more products from Future You and Ashley responded that she would not because she believed that the business had been stolen from her friend. The Debtor said she had received a copy of the message exchange from Ashley Knight.

The Debtor next identified a post from Mr. DeVore's Facebook account she believed was made on the day of the Debtor's creditors meeting. The Debtor said that the post had been forwarded to her by her mother. In the post that included a smiling "selfie" of Mr. DeVore, he complained that he had a hard day and stated, in part, "Watching someone completely self-destruct right in front of your eyes is sad." The Debtor said that Mr. DeVore had appeared at the

telephonic creditors meeting and laughed out loud at one of her answers to the trustee's questions; the trustee, in turn, told Mr. DeVore to keep his comments to himself.

The Debtor identified another undated Facebook post made by Mr. DeVore asking whether any of Mr. DeVore's friends knew of an "expert leatherman" and saying that he expected to have "some Louis Vuitton black leather real soon[.]" The Debtor explained that she was the owner of two Louis Vuitton handbags that had been discussed at her creditors meeting and that had been turned over to the trustee to be sold. In yet another Facebook post identified by the Debtor, Mr. DeVore criticized his "most recent ex" and her mother without referring to the Debtor by name. The Debtor also identified a document she described as a TikTok alert letting her know that Mr. DeVore had begun following her on that social media platform. She said that she received the alert in late July.

An email from Mr. DeVore to Attorney Justin Laughter dated July 28, 2023, was identified by the Debtor. She said that Attorney Laughter had been hired previously by Future You to do trademark work for the business. As evidenced by the email thread included in the exhibit, invoices for legal work done by Attorney Laughter in 2022 and early 2023 had not been paid and collection emails had been sent to Future You at the email addresses for both Mr. DeVore and the Debtor. Mr. DeVore's response to Attorney Laughter's collection letter said that the Debtor was in bankruptcy but was also still a manager of Future You. Mr. DeVore asserted that his case in Bond County

would go forward at some point and that, because of some unidentified post-bankruptcy malfeasance, the Debtor would not be protected through her bankruptcy from personal claims against her held by Mr. DeVore and other creditors such as Attorney Laughter. He urged Attorney Laughter to go after the Debtor personally but also said that if Attorney Laughter did not do so, Mr. DeVore would add the amounts owed to Attorney Laughter to the amounts he was going to pursue notwithstanding the Debtor's bankruptcy. Both Attorney Pioletti and Mr. DeVore's bankruptcy counsel were copied on the email.

Finally, the Debtor identified an email sent directly to her by Mr. DeVore on July 31, 2023. The email thread included a demand letter from a creditor—Aeronet—related to shipping charges incurred by Future You. In his email copied to Attorney Pioletti and his own bankruptcy counsel, Mr. DeVore claimed that he would be pursuing the Debtor for hundreds of thousands of dollars post-bankruptcy due to her "bad faith."

The Debtor concluded her direct testimony by stating that she had reduced her use of social media since her bankruptcy filing and that her Bow and Arrow Salon has been negatively impacted by the lack of social media exposure.

Under cross-examination by Mr. DeVore's attorney, the Debtor was asked several times in several different ways whether she had communicated with the creditors of Future You since she filed her bankruptcy. She repeatedly denied have any such communications. She was also asked several times in several different ways if she had communicated with customers of Future You.

She responded that some customers were her friends and she had talked with or otherwise communicated with them. Asked specifically about Ashley Knight, the Debtor said that they are friends, that Ashley had reached out to her before the bankruptcy filing, and that she had shared with Ashley that she was seeking legal advice and was not sure what was going to happen with Future You. She again identified the messages exchanged between Ashley Knight and Janelle Towne wherein Ashley said she would not be purchasing products from Future You. The Debtor again said that she had received a copy of the messages from Ashley.

With respect to ongoing operations at Future You, the Debtor denied having any knowledge. She acknowledged that Ashley Knight had told her that some customers who ordered products were receiving refunds instead of product. But she said that she had stopped communicating with Mr. DeVore in early May; thereafter she "ghosted" him and played no role in the business. She described herself as having taken a "sabbatical" and as trying to "get in a right head space." She said that she did not want to work at the company or for Mr. DeVore. She repeated that she had been looking for an attorney but had trouble finding an attorney to represent her on matters related to the business. She believed that Ryan Cunningham was still doing IT work for Future You and that another person she called Samantha was also working for the company. She stated that she had no desire or intent to purchase the business from Mr. DeVore.

Asked about the $256.80 charge on the Future You charge card after her bankruptcy was filed, the Debtor said that she did not realize her Target account was still linked to the Future You credit card and that she had since terminated that link. She said that she last used the Future You card for business purposes in May 2023. Under redirect examination by her own attorney, she said that the purchases she made in May were for supplies for "Ambassador Boxes" used for promotions to customers.

The Debtor called Janelle Towne as a witness.[1] Ms. Towne said that she became acquainted with Mr. DeVore in June 2022 when she volunteered to work on his campaign for Illinois Attorney General. She became acquainted with the Debtor also through campaign activities. She and the Debtor became friends but did not really "hang out" together because she lived three hours away and because of their age difference. She said that she was old enough to be the Debtor's mother or aunt. Although she had never worked for Future You, Ms. Towne said that Mr. DeVore asked for her help in July 2023 in contacting customers to find out if they were going to purchase products.

Ms. Towne denied knowing that Mr. DeVore had requested an order of protection against the Debtor until about three days before the evidentiary hearing. She denied that the Debtor had ever made unwanted contact with her. To the contrary, she said that the Debtor was welcome to contact her at any time. She also denied talking to the Debtor about Future You, and she denied that the Debtor ever told her that she was going to destroy Mr. DeVore or

---

[1] Ms. Towne testified by videoconference rather than in the courtroom.

damage Future You; she confirmed that the Debtor never made any such threats to her. She also denied that the Debtor had told her that the Debtor was contacting Future You customers. She said that she was aware that the Debtor and Mr. DeVore had a falling out and that Mr. DeVore had kicked the Debtor out of his home.

Mr. DeVore's attorney asked Ms. Towne if she understood that she was testifying under penalty of perjury, and she affirmed that she did. He asked her whether some of the emails she had exchanged with Mr. DeVore would "jog her recognition." Ms. Towne said that she did not know what he was referring to; he did not produce any emails for her review and asked no further questions on that topic. She was also asked if she had prepared a statement for Mr. DeVore about what her testimony might be if she were called as a witness.[2] She said that she had. She was then asked if the information in that statement was true. She said that it was. Neither the statement nor its contents were introduced or offered by Mr. DeVore's attorney.

The Debtor called no other witnesses. All the exhibits she identified were admitted into evidence without objection.

Thomas DeVore testified in his own defense. He said that Future You was founded in 2021 and was owned on a 50/50 basis by him and the Debtor. He said that they each had equal management authority. He testified that the company was started to develop a line of hair care products. He believed in the Debtor's idea for the business and offered to be her business partner and help

---

[2] Ms. Towne was identified as a potential witness on the list Mr. DeVore's attorney provided to the Debtor's attorney before the hearing in accordance with this Court's trial order.

her obtain financing. As the company was getting started, he was involved in what he described as procedural, transactional, and logistical matters along with the financing of the business. The Debtor was involved in the design and production of the hair care products.

According to Mr. DeVore, the products were developed and began to ship in 2022, and, by that fall, the bank was putting pressure on them for a business model regarding how they were going to increase sales. Mr. DeVore said that he signed a personal guarantee at the bank and pledged both real estate and personal property to secure the loan to Future You. He said that Future You owed the bank around $628,000 and owed $60,000 to $70,000 to him for his additional contributions.

Mr. DeVore testified that he and the Debtor ended their personal relationship in February 2023. The Debtor cutoff contact with him and the business in early May. Around the same time, he discussed putting together a marketing plan or sales effort with Ryan Cunningham and reached out to Debtor. Mr. DeVore said that the last time he and the Debtor were together was on May 8 when they discussed trying to come up with a sales plan. By May 9, however, the discussions had deteriorated, and he realized they were not going to agree on a plan. He said that, on May 11, he made what he described as a "generous offer" to the Debtor, but he never received a response from her. He explained that he offered her the opportunity to buy him out by paying $350,000 of the bank debt. Alternatively, he offered to have her sign over her

interest in the business to him and walk away. He acknowledged conditioning his offers on the Debtor signing a non-disparagement agreement.

When the Debtor filed bankruptcy on May 31, Mr. DeVore believed it was her intent to destroy Future You. He believed he was justified in filing the Bond County lawsuit because the bank loan came due on June 1 and because he discovered after the bankruptcy filing that the social media accounts of Future You had been deactivated. He acknowledged being generally familiar with the concept of the automatic stay, admitting that he had been a lawyer for 12 or 13 years and had been involved during that time in "a half a dozen" bankruptcies. He said that he did not retain bankruptcy counsel until mid-July and that all his actions complained of in the Motion for Sanctions had occurred before he retained counsel.

Mr. DeVore identified an email exchange he had with the Debtor's attorney on June 3. The exchange began with Attorney Pioletti telling Mr. DeVore that he was out of the country on vacation and had just learned about the filing of the lawsuit. He said that he would not be back until the end of the week when he would review the matters more closely but that his initial impression was that the filing of the lawsuit clearly violated the automatic stay. Mr. DeVore first responded by email that there was no stay violation because he was not seeking a money judgment. In his second response, sent six minutes later, he claimed that the stay did not protect the Debtor's membership interest in Future You. Mr. DeVore asserted that he believed his comments in the emails to be true at the time he made them. In response to

objections by the Debtor's attorney to the relevance to some of the questioning, Mr. DeVore's attorneys conceded that the hearing was really about damages rather than whether Mr. DeVore had violated the stay.

Mr. DeVore also identified a copy of an email he received from the Debtor's attorney on June 6, 2023, shortly after he notified the Debtor that he had filed his emergency motion for temporary restraining order. In the email, the Attorney Pioletti said that they could work out a return of business assets and that no hearing was necessary. He told Mr. DeVore that he was still on vacation out of the country. Mr. DeVore admitted that the attorney had previously told him that he thought the lawsuit violated the automatic stay. He also acknowledged that, later that same day, the Debtor called Ryan Cunningham and provided him with all information needed to access Future You's social media accounts.

Under cross-examination by the Debtor's attorney, Mr. DeVore clarified that his settlement offer to the Debtor was that if she paid $350,000 on the bank loan, he would pay the balance and allow her to take over the business. He also admitted that he had since purchased the Future You loan from the bank and is the current holder of the note.

Mr. DeVore called no other witnesses, and the two exhibits he identified were admitted into evidence without objection. The attorneys made their closing arguments at the conclusion of the evidentiary presentations. The matter is ready for decision.

## II.  Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C. §1334. All bankruptcy cases and proceedings filed in the Central District of Illinois have been referred to the bankruptcy judges. CDIL-Bankr. LR 4.1; *see* 28 U.S.C. §157(a). Matters concerning the administration of the estate and other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor relationship are core proceedings. 28 U.S.C. §157(b)(2)(A), (O); *Long Beach Acceptance Corp. v. City of Chicago (In re Madison)*, 249 B.R. 751, 756-57 (Bankr. N.D. Ill. 2000) (actions to enforce the automatic stay are core proceedings); *Halas v. Platek*, 239 B.R. 784, 792 (N.D. Ill. 1999). The issues before the Court arise from the Debtor's bankruptcy itself and from the provisions of the Bankruptcy Code and may therefore be constitutionally decided by a bankruptcy judge. *See Stern v. Marshall*, 564 U.S. 462, 499 (2011).

## III.  Legal Analysis

The filing of a voluntary bankruptcy petition operates as an automatic stay. 11 U.S.C. §362(a). The automatic stay serves several purposes in a bankruptcy case; the debtor is protected from creditor collection activities, and the estate is preserved for the benefit of creditors. *In re LaHood*, 437 B.R. 330, 337-38 (C.D. Ill. 2010) (citations omitted). "The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. . . . It stops

all collection efforts, all harassment, and all foreclosure actions." H.R. Rep. No. 95-595, at 340 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6296-6297.

The automatic stay is a "collection of stays" set forth in the several subsections of §362(a). *In re Sayeh*, 445 B.R. 19, 26 (Bankr. D. Mass. 2011). At least three of those stays are at issue here. Section 362(a)(1) stays "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor[.]" 11 U.S.C. §362(a)(1). Section 362(a)(3) stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]" 11 U.S.C. §362(a)(3). Section 362(a)(6) stays "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case[.]" 11 U.S.C. §362(a)(6).

An individual injured by a willful violation of the stay "shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. §362(k)(1). To determine whether a stay violation is willful, the injured party must establish that the violator had actual knowledge of the bankruptcy case and, notwithstanding that knowledge, acted deliberately. *Will v. Ford Motor Credit Co. (In re Will)*, 303 B.R. 357, 363-64 (Bankr. N.D. Ill. 2003) (collecting cases); *In re Grason*, 2013 WL 3781766, at *6 (Bankr. C.D. Ill. July 18, 2013). A debtor does not have to prove that a creditor specifically intended to violate the stay to prove willfulness. *In re Radcliffe*, 563 F.3d 627, 631 (7th Cir. 2009) (citing *Price v. U.S. (In re Price)*, 42 F.3d 1068 (7th Cir. 1994)). Proof that the creditor took

"questionable action despite the awareness of a pending bankruptcy proceeding" is sufficient. *Id.* Good faith is not a defense to a willful stay violation. *In re Thompson*, 426 B.R. 759, 764 (Bankr. N.D. Ill. 2010) (citations omitted). Ignorance of the law does not excuse a willful stay violation. *In re Halas*, 249 B.R. 182, 191 (Bankr. N.D. Ill. 2000). Creditors have an affirmative duty to remedy stay violations without unreasonable delay. *Will*, 303 B.R. at 364-65.

Creditors or other parties in interest who are aggrieved by the imposition of the automatic stay may seek relief from the stay. 11 U.S.C. §362(d). A court, after notice and hearing, may terminate, modify, annul, or condition the stay. *Id.* Under emergency circumstances, *ex parte* stay relief may be granted. Fed. R. Bankr. P. 4001(a)(2). Hearings on stay relief motions may be scheduled on shortened notice. *Id.* Orders granting relief from the automatic stay are generally stayed for 14 days after entry, but a court may find that the order should be immediately enforceable. Fed. R. Bankr. P. 4001(a)(3).

Mr. DeVore does not dispute that he knew of the Debtor's bankruptcy filing when he took the actions complained of in the Motion for Sanctions. Because he knew of the bankruptcy but proceeded with state court litigation even after being advised by the Debtor's attorney that he was violating the stay, his conduct was willful. *Radcliffe*, 563 F.3d at 631. Mr. DeVore has never sought relief from the stay. His conduct therefore constituted willful and, as will be explained below, egregious violations of the stay and will result in the imposition of sanctions.

## A. The Bond County Lawsuit

Mr. DeVore's Bond County complaint—filed two days after the Debtor filed bankruptcy—sought to judicially dissolve Future You, to judicially dissociate the Debtor from Future You, and to require the Debtor to account to Future You for products she had taken from inventory for use in her salon.[3] The filing of the complaint violated the automatic stay.

When the Debtor filed her bankruptcy, all her property—regardless of its value or whether another person or entity had an interest in the same property—became property of her bankruptcy estate. 11 U.S.C. §541(a)(1). This Court, by reference from the District Court, then had exclusive jurisdiction over all such property. 28 U.S.C. §1334(e)(1). And, as set forth above, all the Debtor's interests in property that became property of her estate were protected by the automatic stay. 11 U.S.C. §362(a)(3). The Debtor's 50% membership interest in Future You became property of the estate when she filed. Because the Bond County lawsuit sought to exercise control over the Debtor's membership interest in Future You and to effectively terminate that interest, Mr. DeVore violated the stay by the filing the lawsuit.

The lawsuit was brought with Future You named as a co-plaintiff with Mr. DeVore and with Mr. DeVore serving as its attorney and acting on its behalf. At the time, however, by his own admission during his testimony, Mr. DeVore controlled only 50% of the membership and management of the company and did not have authority to unilaterally decide to have the entity

---

[3] The case filed June 2, 2023, in the Circuit Court of Bond County, Illinois, was captioned: Thomas G. DeVore, Future You Brands, LLC, Plaintiffs, vs. Riley N. Craig, Defendant, Case #2023-CH-3.

sue the other 50% member/manager. Further, even in his individual capacity, his right, if any, to terminate the Debtor's interest in Future You and to take over Future You was stayed. In the complaint, he cited Illinois law that provides that a member of a limited liability company is dissociated upon a bankruptcy filing. 805 ILCS 180/35-45(7)(A).[4] But Mr. DeVore failed to consider that Illinois law also provides that a dissociated member retains the rights of a transferee of the membership interest. 805 ILCS 180/35-55(a). And he also wholly failed to consider that nothing in Illinois law provides, or could provide, that a statutory dissociation may be enforced despite the existence of a bankruptcy automatic stay. Both before and after filing bankruptcy, the Debtor had a recognizable property interest in her membership in Future You. The filing of the Bond County lawsuit that sought to enforce a termination of her interest in Future You and to dissolve Future You violated the stay.

The Bond County lawsuit also demanded an accounting from the Debtor. Mr. DeVore alleged that the Debtor had taken product inventory from Future You to her salon to sell to retail customers and requested that she be ordered to account for "all sales of inventory over the last 180 days[.]" Under Illinois law, an accounting is an equitable remedy that requires a person or entity to reconcile receipts and disbursements. *Devyn Corp. v. City of Bloomington*, 2015 IL App (4th) 140819, ¶71. As a practical matter, demanding an accounting is a preliminary step in a collection action focused on determining how much is owed before a money judgment is sought. Mr. DeVore claimed that he did not

---

[4] The complaint actually cited 805 ILCS 180/35-45(6)(A) but referred to the substance of subsection (7)(A).

violate the stay in requesting the accounting because he did not ask for a money judgment, but the stay also prohibits acts to assess the amount of a claim. 11 U.S.C. §362(a)(6). The only fair reading of Mr. DeVore's demand for an accounting is that it was part and parcel of a collection action against the Debtor with respect to a claim that arose before the commencement of this case. As such the filing of the demand for an accounting violated the automatic stay. 11 U.S.C. §362(a)(1), (6).

Despite receiving clear and prompt notice from the Debtor's attorney that the filing of the Bond County lawsuit violated the stay, Mr. DeVore filed an emergency motion for a temporary restraining order and preliminary injunction in the Bond County action just four days later. In his emergency motion, Mr. DeVore alleged that the Debtor was in possession of personal property undisputedly owned by Future You. In making that assertion, however, he obviously had not consulted with the Debtor or her attorney about the items and their ownership. Mr. DeVore also did not claim to have consulted with the Chapter 7 trustee about the ownership of the property. Any interest the Debtor had in the property, even if only possessory, was protected by the stay and, as set forth above, this Court has exclusive jurisdiction to determine what is or is not property of the estate. Even if Mr. DeVore was correct that some or all of the items listed in the motion were owned by Future You, the subject matter jurisdiction to make that determination was vested in this Court, and his filing of the emergency motion in the state court again violated the stay.

Further, Mr. DeVore did not limit the requested relief in his emergency motion to a turnover of what he claimed was Future You's property. In the motion, which he set for hearing on one day's notice, he also asked the state court to find that he and Future You had "clear ascertainable rights under Illinois law to be free to operate its business without interference" from the Debtor. Thus, he was asking for an immediate order giving him control of the Debtor's interest in Future You notwithstanding the fact that such interest was, without question, property of her bankruptcy estate and subject to the protection of the automatic stay. 11 U.S.C. §362(a)(3). Again, Mr. DeVore's filing of the emergency motion violated the stay.

At the hearing, Mr. DeVore presented no defense to his conduct. He testified briefly about the fact that the Bradford National Bank loan had become due on June 1, suggesting that post-petition event somehow impacted the reach of the automatic stay. After realizing that the testimony was ineffective, however, his attorney suggested that the issue before the Court was really one only of damages. In his written response to the Motion for Sanctions, Mr. DeVore said that he acted in good faith and argued that his good faith relieved him of liability for his stay violations. But good faith is irrelevant in determining whether the stay was violated. *Thompson*, 426 B.R. at 764 (citations omitted). And, in any event, Mr. DeVore has never suggested any basis by which his conduct could be judged to have been in good faith. He knew the bankruptcy had been filed and yet he went forward repeatedly seeking to take control of estate property by state court order without seeking

relief from the stay. *In re Stancil*, 487 B.R. 331, 342-44 (Bankr. D.D.C. 2013) (to the extent courts have entertained a defense of "good faith" it has really been one of a lack of willfulness; there is no "good faith" defense to a willful violation); *see also In re Swindle*, 584 B.R. 259, 265-66 (Bankr. N.D. Ill. 2018) (equating technical violation with good faith but explaining that the failure to remedy a violation after receiving notice makes the violation willful). As an attorney, Mr. DeVore had the ability and resources to investigate the extent of the stay and could have easily determined the error of his ways. He makes no claim, however, that he did a minute's research or consulted the Bankruptcy Code before acting. His violations were therefore not only willful but also indefensible and egregious.

Mr. DeVore claimed that the Debtor was not damaged by his conduct because she called the clerk in Bond County and the state court stayed the proceedings. In that regard, Mr. DeVore is lucky; the state court respected the automatic stay even when Mr. DeVore did not and saved Mr. DeVore from causing significantly more damage than he caused by his initial filings. But just staying the lawsuit is insufficient to rectify the stay violation. It appears from the testimony and exhibits that the Bond County lawsuit remains pending, and Mr. DeVore has made clear that he intends to proceed with the lawsuit in the future. Mr. DeVore has, however, an affirmative duty to remedy his stay violation by dismissing the lawsuit—he must undo his wrongful conduct, not just put it on hold. *Swindle*, 584 B.R. at 265-66; *Will*, 303 B.R. at 364-65. Further, it is important to note that "[a]ctions taken in violation of an

automatic stay ordinarily are void." *Middle Tenn. News Co. v. Charnel of Cincinnati, Inc.*, 250 F.3d 1077, 1082 (7th Cir. 2001) (citing *Matthews v. Rosene*, 739 F.2d 249, 251 (7th Cir. 1984)). Because the filing of the Bond County lawsuit violated the stay, the filing was void and the lawsuit is a nullity. The lawsuit cannot be prosecuted and must be dismissed. Even when the stay terminates at some point in the future, as it certainly will, the void filing will not and cannot be resurrected.[5] Leaving the lawsuit hanging over the Debtor's head represents an ongoing violation of the stay for which potential damages continue to run. Damages for Mr. DeVore's stay violation in filing the Bond County lawsuit and emergency motion will be discussed below.

## B. The Petition for Order of Protection

Having been stayed in his lawsuit in Bond County, Mr. DeVore filed a petition for an order of protection against the Debtor on June 23, 2023.[6] In filing the action, Mr. DeVore relied on the Illinois Domestic Violence Act, which identifies one of its purposes as the recognition that "domestic violence is a serious crime" that "produces family disharmony[.]" 750 ILCS 60/102(1). Under the Act, domestic violence means abuse that includes "physical abuse, harassment, intimidation of a dependent, interference with personal liberty or willful deprivation[.]" 750 ILCS 60/103(1), (3). Actions commenced against a

---

[5] The dismissal of the Bond County lawsuit may be without prejudice but not with leave to reinstate. If relief is needed to wind up Future You after the bankruptcy is concluded, a new lawsuit might be appropriate. But the current lawsuit is a nullity and can never be reinstated.

[6] The action filed in the Circuit Court of Bond County, Illinois, was captioned: Thomas G. DeVore v. Riley N. Craig, Case #2023-OP-55.

debtor "regarding domestic violence" are not protected by the automatic stay under §362(a). 11 U.S.C. §362(b)(2)(A)(v). But actions purported to be brought under the Act based not on domestic violence or abuse but rather on frivolous accusations and false assertions are not excepted from the protections of the stay. Mr. DeVore's petition falls into that category. He was not a victim of domestic violence when the petition was filed, and his attempt to shoehorn his business disputes with the Debtor into an action for an order of protection not only violated the stay but is highly offensive considering the seriousness of the problems that the Act was enacted to combat.

Mr. DeVore used a pre-printed form for his petition and checked boxes claiming that the Debtor was harassing him, stalking him, and interfering with his personal liberty. The more detailed allegations he included in his attached narrative do not, however support those claims. For example, Mr. DeVore claimed that a social media post from the Debtor in which he was not even mentioned by name interfered with his liberty interests. But "interference with personal liberty" is defined as "committing or threatening physical abuse, harassment, intimidation or willful deprivation" to compel another to engage or abstain from certain conduct. 750 ILCS 60/103(9). Although his own social media posts and those of others of may have caused him embarrassment, nothing about such posts even remotely supports an allegation that the Debtor compelled Mr. DeVore to engage in or abstain from any particular conduct and, accordingly, his allegations could not have supported the entry of an order of protection. *In re Marriage of Healy*, 263 Ill. App. 3d 596, 599 (1994) (petitioner's

allegations that her husband's conduct caused her to be unable to eat or sleep were insufficient to justify entry of order of protection where there was no evidence that husband actually compelled her not to eat or sleep).

Likewise, Mr. DeVore's allegations that the Debtor was harassing him fell well short of what would be needed to support that claim. "Harassment" is a defined term in the Act and, although it includes causing emotional distress as Mr. DeVore said it does, the examples in the statute involve serious wrongdoing such as creating disturbances at a petitioner's place of work, repeatedly telephoning or following the petitioner, continuously remaining outside the petitioner's home or office, and threatening physical harm or confinement. 750 ILCS 60/103(7). None of the conduct alleged against the Debtor comes even remotely close to the statutory examples of harassment that would support the entry of an order of protection. To the contrary, according to his own testimony, Mr. Devore's main complaint against the Debtor was that she had completely stopped communicating with him and had ignored his efforts to communicate with her. He admitted that the last time they had any direct contact was more than six weeks before he filed for the order of protection.

Mr. DeVore attempted to bolster his request for an order of protection through an attached narrative that contained anecdotes involving Janelle Towne, Ryan Cunningham, and Melissa Smith. He also attached to his petition excerpts from social media pages and private messages that he claimed supported his request. Much of this information is misleading and confusing,

at best; many of the excerpts are undated and are cropped so as to provide only part of whatever exchange occurred.

In his narrative, Mr. DeVore said that the Debtor made unsolicited contact with Janelle Towne and in the process threatened Ms. Towne, made crude and vile accusations against Ms. Towne, and told Ms. Towne that she would destroy Future You's business. At the hearing, however, Ms. Towne testified that she was friends with both the Debtor and Mr. DeVore, denied that any contact she had with the Debtor was unsolicited or unwelcome, and denied that the Debtor had ever threatened her or communicated to her threats about Mr. DeVore or Future You. She also denied that the Debtor told her that she had contacted the customers of Future You to discourage them from continuing to do business with Future You. Mr. DeVore's attorney conducted a wholly ineffective cross-examination of Ms. Towne, asking her if she exchanged emails with and gave a statement to Mr. DeVore and suggesting such documents contained information inconsistent with her testimony. But Ms. Towne denied any inconsistencies in her testimony, asking the attorney repeatedly to what he was referring. The attorney offered neither the documents nor any explanation for his questions, and Ms. Towne's testimony directly refuting the information Mr. DeVore claimed to have obtained from her and included in his petition stood unrebutted.[7]

---

[7] A copy of the messages exchanged between Ms. Towne and Ashley Knight was also attached to the narrative. Mr. DeVore said in the narrative that the exchange proved that the Debtor was turning customers against Future You. But the Debtor was not involved in the exchange, and Ms. Knight only responded negatively when she was contacted by Ms. Towne at the request of Mr. DeVore. The messages were not posted on social media and would not be public but for Mr. DeVore attaching them to publicly filed documents.

Mr. DeVore also claimed in the narrative attached to his petition that the Debtor had made an unsolicited call to his employee, Ryan Cunningham, on June 6, 2023. He said that the Debtor was critical of him in several respects during that call. But June 6 was the day Mr. DeVore violated the stay by filing his emergency motion in Bond County and notifying the Debtor and her attorney by email that he intended to set the motion for hearing the next day. He admitted in his testimony that, in response to his filing, the Debtor's attorney had contacted him, urging him not to set a hearing and suggesting that issues regarding business property could be resolved without litigation. Mr. DeVore further admitted in his testimony that, in response to his filing that requested the return of passwords and other information needed to access Future You's social media accounts, the Debtor called Mr. Cunningham and provided him with all the required information. In other words, the Debtor's response to Mr. DeVore's filing of the emergency motion in violation of the stay was calling and providing to Mr. DeVore's associate the exact information sought. There was no basis for Mr. DeVore to characterize the Debtor's call to provide the information as unsolicited. To the contrary, Mr. DeVore had demanded that the Debtor communicate the information. His use of the term "unsolicited" in his petition was disingenuous and dishonest. Further, the phone conversation and the Debtor's alleged criticism of him during the call, according to his own narrative, revolved around business topics and not around physical threats or deprivation of his personal liberty.[8] Nothing about

---

[8] Ryan Cunningham was not called as a witness to corroborate the information attributed to him by Mr. DeVore.

the Debtor's call to Mr. Cunningham supported the petition for order of protection filed against her.

The final anecdote recited by Mr. DeVore in his narrative involved Melissa Smith. Mr. DeVore claimed that the Debtor commented on Ms. Smith's social media page even though she did not know Ms. Smith and that the comment was evidence of the Debtor's intent to harass Mr. DeVore. He claimed that Ms. Smith was a friend of his, although not a friend with whom he had an interpersonal relationship. He said that he had shared Ms. Smith's posts on his own social media pages, and that the Debtor's comment on Ms. Smith's page could only have been made for the purpose of causing him emotional distress. Attached as an exhibit were separate excerpts purportedly from posts on Ms. Smith's social media page on an unidentified platform: one reflecting a post that Mr. DeVore shared to his own account, the other showing a comment by the Debtor to a post warning someone to be cautious of some other unnamed person who likely was Mr. DeVore. Above the Debtor's comment, the name Melissa Smith is shown but whatever post Ms. Smith made to which the Debtor appears to have responded is not visible. Nothing in the Debtor's post is threatening, and it is unclear why her comment—which in no way indicates it is related to the post shared by Mr. DeVore—would support a claim that the Debtor was engaged in harassment rising to the level of domestic violence against Mr. DeVore or anyone else.[9]

---

[9] Melissa Smith was not called as a witness to support Mr. DeVore's claims in his petition for order of protection.

Mr. DeVore checked several boxes on the pre-printed form for the relief he was seeking, including that the Debtor be ordered not to communicate with him notwithstanding that his major complaint against her was her lack of communication. Most telling, however, is the request he added seeking a remedy that the Debtor be barred from having any contact with employees, clients, or customers of Mr. DeVore or Future You—an obvious backdoor attempt to gain control over Future You despite the automatic stay. Further, he sought to bar the Debtor from making any post on any social media platform regarding Mr. DeVore—an obvious effort to get the non-disparagement clause or "gag order" he said he wanted from the Debtor but had been unable to negotiate. The requested relief had nothing to do with domestic violence or the other crimes and horrific conduct that the Illinois Domestic Violence Act was designed to address. Mr. DeVore's use of the Act in seeking an order of protection to deal with a business dispute was a blatant attempt to circumvent the automatic stay. The exemption from the stay for actions regarding domestic violence does not apply here. Mr. DeVore was not a victim of domestic violence, and he makes no credible argument that he was such a victim when he filed his petition.[10] Mr. DeVore did not even attempt to justify the filing when he testified; the Debtor's testimony that she never engaged in domestic violence or other conduct alleged in the petition for order of protection stands unrebutted.

---

[10] Attached to the copy of the petition for order of protection that was admitted into evidence was a copy of the email from Mr. DeVore to Attorney Pioletti notifying Attorney Pioletti of the filing of the petition. In the email, Mr. DeVore set forth numerous complaints about the Debtor—all related to their business disputes and not one even remotely related to his claims of domestic violence, stalking, or interference with personal liberty.

Mr. DeVore violated the automatic stay in filing the petition for an order of protection.

As with the Bond County lawsuit, it is not clear from the record before this Court whether this action has been dismissed or just stayed. If not already dismissed, Mr. DeVore must seek dismissal forthwith for the same reasons set forth above as to the Bond Count lawsuit.[11] Damages for this stay violation will be discussed below.

### C. The $256.80 Credit Card Charge

In her Motion for Sanctions, the Debtor alleged that Mr. DeVore violated the stay by seeking to collect $256.80 from her for charges made on a Future You credit card. In her direct testimony, she identified an email Mr. DeVore sent to her twelve days after she filed her bankruptcy threatening her with theft charges if she did not pay immediately.[12] Under cross-examination, the Debtor admitted that she made the charges at Target post-petition without realizing that her Target account was linked to her Future You credit card. She confirmed that her last business-related purchases had been made in May before she filed.

---

[11] Nothing in this Opinion precludes the Debtor from seeking further sanctions from the state court for the filing of frivolous pleadings there. Although this Court discourages both Mr. DeVore and the Debtor from continuing to escalate their disputes, the filing of the petition for order of protection by Mr. DeVore likely violated Illinois Supreme Court Rule 137(a). Enforcement of that Rule would be within the jurisdiction of the state court rather than this Court.

[12] The email said that he would take her to small claims court for theft. Obviously, small claims court is a civil court and seeking relief there would be limited to obtaining a money judgment. In Illinois, a criminal prosecution for theft would have to be initiated by the state's attorney and would be a different process altogether. It is clear from the Debtor's testimony that she did not understand this difference and was motivated to respond to Mr. DeVore without even consulting her attorney because of the threat.

The Court understood the testimony to be an admission that the charges were made post-petition and that she was not protected by the automatic stay from collection of the credit card debt. In closing arguments, however, her attorney argued that, when she paid the $256.80 to Mr. DeVore, the Debtor was forced to use property of the estate—money in her personal account—and the collection therefore violated the stay. There was not, however, any testimony about the source of the funds she used and, even if she had used property of the estate to pay Mr. DeVore, that might have been a stay violation by her but not necessarily by him. Based on the Debtor's admissions, this Court cannot find that she met her burden of proof as to a stay violation by Mr. DeVore in this instance.

Not finding a stay violation does not mean that Mr. DeVore acted properly or professionally. He used poor judgment in threatening theft charges; he overreacted in proportion to the small amount involved here. Likewise, he purported to act on behalf of Future You when he did not have authority to do so. This argument was not developed by the Debtor but could have been proffered as a better argument for finding a stay violation. Because it was not asserted, the Court will not find a stay violation.

### D. Emails and Social Media Posts

After the Debtor filed bankruptcy, Mr. DeVore made numerous social media posts and sent a volume of emails—all intended to embarrass the Debtor. Although this Court will not find that these activities constituted

separate, additional stay violations, the conduct will be considered as aggravating and as supporting the award of punitive damages discussed below.

After this case was filed, Mr. DeVore sent an email to an individual at Future You's shipping vendor calling the Debtor a petulant child and saying that she was ignorant and had a nasty character. He also advised the shipping company employee that the automatic stay did not limit collection activities against the Debtor for business debts. A month or so later, he sent an email to Attorney Justin Laughter, another Future You creditor, encouraging him to take action directly against the Debtor and advising Attorney Laughter that the Debtor's bankruptcy "will not protect her from personal claims like yours and mine[.]" In each case, Mr. DeVore encouraged a third party to violate the stay by proceeding directly against the Debtor and provided faulty legal advice that her bankruptcy was not an impediment to the actions that might be taken. Luckily for him, neither creditor appears to have taken his inaccurate legal advice.

Mr. DeVore was clearly wrong on the law as he advised these creditors to go forward. Further, his communications with these creditors airing his grievances against the Debtor undercut any claim he might have that she was the one communicating with creditors and damaging Future You. If Mr. DeVore wanted creditors and the public in general to maintain confidence in Future You, his approach was not the way to go about it. There was no reason for these communications to be written as they were and, even though the Court

finds no additional stay violation, the emails provide clear evidence of Mr. DeVore's intent to harass the Debtor.

Likewise, Mr. DeVore's several social media posts wherein he does not name but clearly refers to the Debtor are not in and of themselves additional stay violations. They are, however, further evidence of Mr. DeVore's intent to harass the Debtor by publishing personal information about her and making her the butt of his jokes. An analysis of the pros and cons of posting the details of one's personal life on social media is well beyond the scope of this Opinion and the expertise of this Court. Mr. DeVore's personal and professional judgment in making such posts, however, is certainly questionable. And his claim that he was victimized by the Debtor's posts is wholly undercut by his own postings.

## E. Damages

The Debtor is entitled to an award of her actual damages including her costs and fees and, under the circumstances, an award of punitive damages. 11 U.S.C. §362(k)(1). The Debtor testified that she hired counsel and paid him a $3000 flat fee to defend her against the petition for order of protection filed by Mr. DeVore. Because the filing of the petition violated the stay, she is entitled to an award of $3000 in actual damages.

The Debtor is also entitled to have the fees she incurred with Attorney Pioletti related to these issues paid by Mr. DeVore. Attorney Pioletti filed an itemization of his time showing the expenditure of 4.06 hours dealing with the

stay violation issues before the hearing. He said that his time on the day of the hearing consisted of a 1.5 hour drive each way between his office and the courthouse and the 3.5 hours spent at the evidentiary hearing. He said that he charged $275 per hour. Attorney Pioletti's total claim amounts to 10.56 hours at $275 per hour. Because both his rate and the amount of time expended are reasonable, Attorney Pioletti will be awarded $2904, to be paid by Mr. DeVore.[13]

Because this Court finds Mr. DeVore's stay violations to be egregious and his conduct to be both disingenuous and dishonest, punitive damages will be awarded here. The primary purpose of a punitive damage award for a willful stay violation is to cause a change in the creditor's behavior. *In re Riddick*, 231 B.R. 265, 269 (Bankr. N.D. Ohio 1999). Factors to be considered for such an award of punitive damages include: the nature of the creditor's conduct, the nature and extent of harm to the debtor, the creditor's ability to pay damages, the level of sophistication of the creditor, the creditor's motives, and any provocation by the debtor. *In re Shade*, 261 B.R. 213, 216 (Bankr. C.D. Ill. 2001) (citations omitted) (Lessen, J.).

---

[13] Attorney Pioletti's request for fees was not properly filed. He filed itemized time records but did not include an affidavit even though he said that he did. He presented information about his additional fees associated with the hearing during arguments rather than during his evidentiary presentation. Nevertheless, this Court will award the fees as requested. It is obvious that Attorney Pioletti did not keep track of all his time on the matter. His time records do not include time to review many of the documents introduced at the hearing even though he clearly did review those documents. He clocked no time for communicating with Janelle Towne and providing her with copies of the exhibits even though it was obvious from her testimony that he had done so. He appeared at a status hearing on the Motion for Sanctions on August 22, 2023, but did not bill that time. Attorney Pioletti's failure to make a complete fee request prejudiced him but not Mr. DeVore as it results in Attorney Pioletti not being compensated for all of his time and Mr. DeVore therefore not being assessed damages for all of the time expended. Requiring Attorney Pioletti to present a corrected, formal application would likely result in a larger fee being requested, and the Court sees no reason to prolong this litigation to achieve that result. Mr. DeVore's attorney did not object to the manner by which Attorney Pioletti sought to prove-up his fees at the hearing.

All the factors support an award of punitive damages here. Mr. DeVore's conduct was indefensible. He filed a lawsuit just two days after the Debtor filed bankruptcy, and, despite being told by Attorney Pioletti that the filing violated the stay, he doubled down with an emergency motion and then his petition for an order of protection. The filing of the petition for an order of protection was particularly offensive because Mr. DeVore attempted to use a statute designed to help vulnerable people, including children, from the horrors of domestic violence to settle his business disputes with the Debtor. He misrepresented that he was a victim of domestic violence when he was not, and he presented false and misleading evidence in his petition and the attached narrative. All of this harmed the Debtor by embarrassing her and by causing her to incur over $5900 in fees to two separate attorneys. Even now the Debtor may be forced to spend more if Mr. DeVore does not remedy ongoing violations by dismissing the actions that he filed in violation of the stay.

Mr. DeVore is capable of paying a punitive damage award. He testified that he had the financial wherewithal to obtain the $600,000 in financing for Future You and that he had assets to post as collateral to secure the loan. He is also a sophisticated creditor. He is an attorney with the resources to have checked the law before acting, and he knew what Attorney Pioletti was telling him when advised that the filing of the Bond County lawsuit violated the stay. Mr. DeVore also knew exactly what he was doing when he told two different creditors that the Debtor's bankruptcy did not impede their collection efforts. Mr. DeVore's motives were clear: he intended to stir up trouble for the Debtor

and harass her. If Mr. DeVore's motives were truly limited to salvaging his business investment, he would have acted professionally, reached out to the trustee to make a deal to get control of Future You, cut his losses, and moved forward. Instead, he wasted his time disrupting the Debtor's creditors meeting, posting nonsense about the Debtor's Louis Vuitton purses on his social media platforms, and claiming to be a victim of domestic violence when he was not. When the Debtor filed her bankruptcy, Mr. DeVore had a right to be annoyed; he may well suffer a significant financial loss because of the failure of Future You. But her filing was not provocation for him to violate the stay, and his attempts to suggest otherwise are not credible.

The Court will award to the Debtor punitive damages in the amount of $7500 to be paid by Mr. DeVore. This amount is less that the $20,000 the Debtor requested but hopefully is enough to make Mr. DeVore change his behavior. *Riddick*, 231 B.R. at 269. The award is just a little more than the amount awarded for actual damages. Thus, it may get Mr. DeVore's attention and cause him to realize that he must respect the law and the orders of this Court or bear the consequences of his actions. If the sanctions imposed are not enough to get Mr. DeVore's attention, future violations should be brought to the Court's attention and additional sanctions may issue.

## IV.    Conclusion

The Debtor met her burden of proof, establishing by a preponderance of the evidence that Mr. DeVore violated the automatic stay when he filed the

Bond County lawsuit, again when he filed the emergency motion in the Bond County lawsuit, and yet again when he filed the petition for an order of protection. Mr. DeVore's violations were willful and egregious; his conduct was highly unprofessional.[14] The Debtor will be awarded her actual damages, her attorney fees, and punitive damages.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

### ###

---

[14] The evidence presented at the hearing suggests that Mr. DeVore not only violated the automatic stay but that he also may have violated several Illinois Rules of Professional Conduct. The Debtor's unrebutted testimony was that she began an intimate, personal relationship with Mr. DeVore after he began representing her and while he was still representing her in legal matters. The Rules prohibit such conduct by lawyers. Ill. R. Prof'l Conduct (2010) R. 1.8(j). The evidence also established that Mr. DeVore was the lawyer who drafted the documents for the creation of Future You, a business that he owned with the Debtor. Under the Rules, strict guidelines apply when an attorney goes into business with a client. Ill. R. Prof'l Conduct (2010) R. 1.8(a). The Debtor's unrebutted testimony that she was confused about what she was signing when Mr. DeVore told her to sign the Future You operating agreement without reading it suggests that the strict guidelines were not followed. *Id.* The nature of their personal relationship, as well as Mr. DeVore's stated opinions about the Debtor's business acumen and her reliance on his judgment and expertise, would certainly complicate any effort to satisfy the requirements of Rule 1.8(a) and likely implicate Rule 1.7 as well. In addition, Mr. DeVore's petition for order of protection contained frivolous and false allegations such as his assertion that the Debtor was restraining or interfering with his personal liberty; his own testimony was that he had not been in direct contact with the Debtor for more than six weeks before he filed for the order of protection and his main complaint against her was that she refused to communicate with him. The filing of frivolous pleadings is prohibited, and attorneys may not make false statements of law or fact to a tribunal. Ill. R. Prof'l Conduct (2010) R. 3.1, 3.3(a)(1). Rule 4.2 limits an attorney's ability to communicate with a person they know is represented by counsel. Ill. R. Prof'l Conduct (2010) R. 4.2. Notwithstanding the fact that the Debtor was represented by counsel in her bankruptcy, Mr. DeVore repeatedly contacted her directly, suggesting several times that he was free to do so because no attorney was representing her in the Bond County lawsuit. But the Bond County lawsuit was filed in violation of the stay and sought to address matters exclusively within this Court's jurisdiction—matters for which Attorney Pioletti was clearly representing the Debtor. Attorney Pioletti's time records show at least one communication on June 12, 2023, asking Mr. DeVore to stop contacting the Debtor directly. Mr. DeVore apparently ignored that request. He continued to try to bootstrap an argument that, because he—in violation of the stay—filed actions in state court where Attorney Pioletti did not have an appearance on file, he could then communicate directly with the Debtor about her property, debts, and other matters involved in her bankruptcy. Such conduct is prohibited by the Rules. *Id.* The investigation and determination of whether violations of the Illinois Rules of Professional Conduct actually occurred here is within the jurisdiction of the Illinois Attorney Registration and Disciplinary Commission and the Illinois Supreme Court; the appropriate referral for investigation will be made. *See* Ill. R. Prof'l Conduct (2010) R. 8.3(a).